**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1692
_____

JOSEPH CURRY,
Appellant

v.

BRIANNE YACHERA, Individually as Trooper
for the Pennsylvania State Police a/k/a Brianne Glad;
RICHARD MCCLURE, Individually and in His Official
Capacity as Detective for the Exeter Township Police
Department; EXETER TOWNSHIP, d/b/a Exeter Township
Police Department; KERRIE FICHTER, Individually and in
Her Official Capacity as Asset Protection for Wal-Mart
Stores, Inc. a/k/a Walmart; WALMART STORES INC, AKA
WalMart; JOHN DOES 1-10; WALMART STORES EAST
LP, AKA WalMart

Appeal from the District Court for the Eastern District of
Pennsylvania
(No. 5-14-cv-05253)
District Judge: Hon. Lawrence Stengel

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 10, 2015

Before:  FUENTES, CHAGARES, and GREENBERG,
<u>Circuit Judges</u>.

(Filed: September 1, 2016)
_____

OPINION
_____

Matthew B. Weisberg, Esq.
7 South Morton Avenue
Morton, PA 19070
    Counsel for Appellant

Sheryl L. Brown, Esq.
Michael P. Laffey, Esq.
Siana Bellwoar & McAndrew, LLP
941 Pottstown Pike
Suite 200
Chester Springs, PA 19524
    Counsel for Appellees Richard McClure and Exeter
        Township

Claudia M. Tesoro
Senior Deputy Attorney General
Office of Attorney General
21 South 12th Street
Philadelphia, PA 19107
    Counsel for Appellee Brianne Yachera

Patrick J. McDonnell, Esq.
Karen L. Green, Esq.
McDonnell & Associates, P.C.
860 First Avenue, Suite 5B
King of Prussia, PA 19406
    Counsel for Appellees Wal-Mart Stores, Inc.,
        Kerrie Fichter, Wal-Mart Stores East


CHAGARES, Circuit Judge.

Joseph Curry appeals the District Court's order dismissing his complaint under Federal Rule of Civil Procedure 12(b)(6). Although we will affirm the District Court's order with a modification, we do so with some reluctance. As we will discuss, the circumstances of this case appear to exemplify what can be described as a flaw in our system of justice — in particular, the inequity bail can create in criminal proceedings.

I.

2

In the fall of 2012, Curry read a newspaper article that stated there was an outstanding warrant for his arrest, related to a theft at a Wal-Mart store in Lower Macungie Township, Pennsylvania. Appendix ("App.") 29.[1] Wal-Mart security employee Kerrie Fitcher identified Curry. App. 30. Curry insists that he had never been in that Wal-Mart store. App. 30. Curry called the Wal-Mart store and spoke to a security employee, John Doe,[2] who refused to review the store surveillance video. App. 30. Curry then called the Pennsylvania State Police and spoke to Trooper Brianne Yachera. App. 30. Yachera informed Curry that he was going to jail and that the courts would "figure it out." App. 30.

On October 29, 2012, Curry was arrested and charged with (1) theft by deception and (2) conspiracy. App. 30. Unable to afford bail, Curry was jailed. On November 14, 2012, while Curry was still in jail, he was charged with "theft by deception – false imprisonment" by Exeter Township Police Detective Richard McClure. App. 30. This charge was separate and apparently unrelated to the charges brought by Yachera. Two months later, McClure met Curry in prison, admitted Curry was innocent of the November 14 charges, apologized, and said he would do whatever he could to help. App. 31. In or about February 2013, McClure's charges against Curry were dropped, but he remained in jail on the charges brought by Yachera. App. 31. Curry was told he would need to wait until September 2013 for the case to proceed. App. 31. During his imprisonment, Curry missed the birth of his child and lost his job. App. 31. Curry feared losing his home and motor vehicle. App. 31. He decided to plead nolo contendere to the remaining charges, theft by deception and conspiracy. App. 31. Following his plea, he was released and returned home. App. 31.

---

[1] The following facts come from Curry's First Amended Complaint and are assumed to be true for purposes of this appeal.

[2] Even though Curry pursues an action against "John Does 1-10," only a single John Doe appears in the "Operative Facts" section of his complaint. App 29-30.

On September 12, 2014, Curry filed a lawsuit asserting claims of malicious prosecution, false arrest, and false imprisonment and seeking damages against Trooper Yachera, Detective McClure, Exeter Township, Kerrie Fitcher, John Does, and Wal-Mart.[3]  The claims were made pursuant to 42 U.S.C. § 1983, the Fourth Amendment, the Fourteenth Amendment, and state law.  The defendants moved pursuant to Rule 12(b)(6) to dismiss the claims and the District Court granted the motion.  App. 1-14.

The District Court determined that the constitutional claims against Yachera, Wal-Mart, John Does, and Fitcher must be dismissed because they were barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  Next, the District Court held that the constitutional claims against McClure failed to state a cause of action primarily because McClure never "seized" Curry.  After dismissing the federal claims, the District Court declined to exercise supplemental jurisdiction over the remaining state law claims.  Curry timely appealed.

II.

The broader context of this matter is disturbing, as it shines a light on what has become a threat to equal justice under the law.  That is, the problem of individuals posing little flight or public safety risk, who are detained in jail because they cannot afford the bail set for criminal charges that are often minor in nature.  One recent report concluded that "[m]oney, or the lack thereof, is now the most important factor in determining whether someone is held in jail pretrial" and that "the majority of defendants cannot raise the money quickly or, in some cases, at all."[4]  By way of example, in New York City in 2013, fifty-four percent of those jailed until their cases were resolved "remained in jail because they could

---

[3] As the District Court noted, Curry named both "Walmart Stores, a.k.a. WalMart" and "WalMart Stores East, L.P. a.k.a. WalMart." App. 3.  We will collectively refer to these entities as "Wal-Mart."

[4] RAM SUBRAMANIAN, ET AL., VERA INSTITUTE OF JUSTICE, INCARCERATION'S FRONT DOOR:  THE MISUSE OF JAILS IN AMERICA, 32 (Feb. 2015).

4

not afford bail of $2,500 or less."[5]  It seems anomalous that in our system of justice, the access to wealth is what often determines whether a defendant is freed or must stay in jail. Further, those unable to pay who remain in jail may not have the "luxury" of awaiting a trial on the merits of their charges; they are often forced to accept a plea deal to leave the jail environment and be freed.[6]

Consider plaintiff-appellant Joseph Curry's alleged circumstances.  The underlying Criminal Complaint charges that Curry collected items worth a total of $130.27 at a Wal-Mart and used a receipt found in the parking lot to return the items for cash.[7]  The maximum sentence he faced for each of

---

[5] Id. (citing NEW YORK CRIMINAL JUSTICE AGENCY, NEW YORK CRIMINAL JUSTICE AGENCY ANNUAL REPORT 30 (2013)).

[6] In the popular media, there has been much recent attention to the plight of poor defendants who are imprisoned because they cannot pay their bail, despite posing little flight or public safety risk.  See, e.g., Nick Pinto, The Bail Trap, N.Y. Times Magazine, Aug. 13, 2015, http://www.nytimes.com/2015/08/16/magazine/the-bail-trap.html; Shaila Dewan, When Bail Is Out of Defendant's Reach, Other Costs Mount, N.Y. Times, June 10, 2015, http://www.nytimes.com/2015/06/11/us/when-bail-is-out-of-defendants-reach-other-costs-mount.html; Sadhbh Walshe, America's Bail System:  One Law for the Rich, Another for the Poor, The Guardian, Feb. 14, 2013, http://www.theguardian.com /commentisfree/2013/feb/14/america-bail-system-law-rich-poor; ALYSIA SANTO, THE MARSHALL PROJECT, WHEN FREEDOM ISN'T FREE, Feb. 23, 2015, https://www.themarshallproject.org/2015/02/23/buying-time; Robert Lewis, No Bail Money Keeps Poor People Behind Bars, WNYC News, Sept. 19, 2013, http://www.wnyc.org/story/bail-keeps-poor-people-behind-bars/.

[7] Curry was charged with theft by deception, pursuant to 18 Pa. Cons. Stat. § 3922(a)(1), a misdemeanor of the second degree.  He was also charged with criminal conspiracy to promote the theft by deception with a co-conspirator, pursuant to 18 Pa. Cons. Stat. § 903(a)(1), also a

the two misdemeanor charges against him was two years. His bail was set at $20,000.[8]

Unable to post his bail, Curry was sent to jail and waited there for months for his case to proceed. While imprisoned, he missed the birth of his only child, lost his job, and feared losing his home and vehicle. Ultimately, he pled nolo contendere in order to return home. Curry has maintained his innocence throughout the criminal proceedings and the present matter. Nevertheless, as part of his nolo contendere plea, Curry must pay restitution of $130.27 to Wal-Mart and the costs of prosecution. He was sentenced to probation for two years. Moreover, as discussed in Subsection IV(A) below, Curry's nolo contendere plea operates as a procedural bar requiring dismissal of his malicious prosecution claim against all defendants except McClure. Thus, Curry's inability to post bail deprived him not only of his freedom, but also of his ability to seek redress for the potentially unconstitutional prosecution that landed him in jail in the first place.

Regrettably, our system of justice is not perfect and Curry's case appears to expose an unsettling imperfection. On this appeal, we can only consider whether Curry's section 1983 claim was properly dismissed by the District Court. We do not criticize Pennsylvania authorities — particularly on the limited record before us. Further, while we highlight a problem in our system of justice, we cannot offer a complete solution — though we are aware of bail reform efforts under

---

misdemeanor of the second degree. The theft was a misdemeanor of the second degree because the amount involved was $50 or more but less than $200. 18 Pa. Cons. Stat. § 3903(a)-(c). The sentence for misdemeanors of the second degree cannot be more than two years. 18 Pa. Cons. Stat. § 1104(2).

[8] This Court requested records from the Court of Common Pleas of Lehigh County. But those records did not include any transcript or specific materials from the bail hearing. As a result of this lack of information, we will not question why bail was set at $20,000.

way.[9]  We hope those efforts will ensure equal justice under the law, regardless of an individual's ability to pay.

## III.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over a District Court's decision to grant a Rule 12(b)(6) motion to dismiss.  Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012).  We accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  Id.

## IV.

### A.

Turning to the merits, we consider first whether the District Court erred in dismissing Curry's section 1983 malicious prosecution claim[10] against Yachera, and by extension, Wal-Mart, John Does, and Fitcher.  We hold that the court did not err.

---

[9] See Jessica Masulli Reyes, Will Delaware End Cash Bail?, The News Journal, Nov. 8, 2015; Tricia L. Nadolny, With City's Jails Jammed, Kenney is Latest to Mull Bail Reform, Phila. Inquirer, July 15, 2015, http://articles.philly.com/2015-07-15/news/64454460_1_prison-population-bail-reform-overcrowded-prisons; Robert Lewis and Cindy Rodriguez, New Bail Alternative Means Freedom for Thousands, WNYC News, July 8, 2015, http://www.wnyc.org/story/no-more-bail-non-violent-offenders/?utm_...people-behind-bars/; Brent Johnson, State Supreme Court Chief Touts N.J.'s "Significant" Bail Reform, N.J. Advance Media, May 15, 2015, http://www.nj.com/politics/index.ssf/2015/05/nj_supreme_court_chief_justice.html.

[10] Curry does not separately challenge the District Court's dismissal of his false imprisonment and false arrest claims or his state law claims against the defendants.  Therefore, we will only focus on his malicious prosecution claims brought under section 1983.

7

In Heck v. Humphrey, the Supreme Court determined that an action seeking damages for an unconstitutional malicious prosecution, conviction, or imprisonment under section 1983 is not cognizable if "a judgment in favor of the plaintiff would necessarily imply the invalidity of [a] conviction or sentence." 512 U.S. at 487. The Court's opinion in Heck was animated by "concerns for finality and consistency," id. at 485, as well as "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions," id. at 486. Accordingly, under what we have termed Heck's "favorable termination rule," Bronowicz v. Allegheny Cty., 804 F.3d 338, 344-45 (3d Cir. 2015), a section 1983 action for damages must be dismissed unless there was no conviction or sentence or "the plaintiff can demonstrate that [a] conviction or sentence has already been invalidated," Heck, 512 U.S. at 487.[11] If an action will not demonstrate the invalidity of the criminal judgment, it should proceed. Id.[12]

---

[11] Curry appears to argue that because he was not in custody at the time of this action, his section 1983 claim should be allowed to proceed. This appeal appears to be the first time Curry has raised this argument. This argument is therefore forfeited. Del. Nation v. Pennsylvania, 446 F.3d 410, 416 (3d Cir. 2006) ("Absent exceptional circumstances, this Court will not consider issues raised for the first time on appeal."). Even if we were to consider this argument, we have previously rejected it. See Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006).

[12] There is no legal basis for Curry's argument that Heck cannot be raised at the motion to dismiss stage. Indeed, in Heck itself the Supreme Court affirmed the Court of Appeals for the Seventh Circuit's affirmance of a dismissal at the motion to dismiss stage. See Heck v. Humphrey, 997 F.2d 355, 359 (7th Cir. 1993), aff'd, 512 U.S. 477, 114 (1994). Similarly, we have affirmed a dismissal at the motion to dismiss stage under Heck before. See, e.g., Williams, 453 F.3d at 177.

Curry entered a <u>nolo</u> <u>contendere</u> plea for the charges brought by Yachera, and under Pennsylvania law, that plea must be treated the same as a conviction under <u>Heck</u>. <u>See</u> <u>United States v. Poellnitz</u>, 372 F.3d 562, 566 (3d Cir. 2004) ("[A] nolo plea is indisputably tantamount to a conviction . . . ."). Even though Pennsylvania law does not treat a <u>nolo</u> <u>contendere</u> as an admission of guilt, it is "equivalent to a plea of guilty" and the defendant "consents to being punished as if he were guilty." <u>Id.</u> at 568 (citing <u>Commonwealth v. Gunter</u>, 771 A.2d 767, 773 (Pa. 2001) (quotation marks omitted)). A <u>nolo</u> <u>contendere</u> plea "'cannot be used against the defendant as an admission in any civil suit for the same act,'" but the judgment of conviction still follows from it, just like a plea of guilty. <u>Id</u>. (quoting <u>Eisenberg v. Commonwealth</u>, 516 A.2d 333, 335 (Pa. 1986)). We have noted that even where the prosecution moves to dismiss criminal charges, there is no favorable termination if the dismissal was the result of a compromise, because this would not indicate "that the accused is actually innocent of the crimes charged." <u>Hilfirty</u> <u>v. Shipman</u>, 91 F.3d 573, 580 (3d Cir. 1996); <u>see generally</u> <u>Havens v. Johnson</u>, 783 F.3d 776, 784 (10th Cir. 2015) ("[T]he <u>Heck</u> doctrine derives from the existence of a valid conviction, not the mechanism by which the conviction was obtained (such as admissions by the defendant), so it is irrelevant that Havens entered an <u>Alford</u> plea [maintaining his innocence]."); <u>Ballard v. Burton</u>, 444 F.3d 391, 397 (5th Cir. 2006) ("[W]e hold that a conviction based on an <u>Alford</u> plea can be used to impose <u>Heck</u>'s favorable termination rule."). For purposes of <u>Heck</u>, Curry was convicted of the charges brought by Yachera.

The constitutional claims against Yachera, and by extension Wal-Mart, John Does, and Fitcher, are precluded by <u>Heck</u> because their success would imply that his conviction was invalid. <u>See</u> 512 U.S. at 486-87. Curry does not allege that his conviction was invalidated to satisfy the favorable termination rule. As a result, we hold that the District Court properly dismissed Curry's constitutional claim of malicious prosecution against Yachera, and by extension, Wal-Mart, John Does, and Fitcher.

B.

9

We will correct one error by the District Court that the parties did not raise or address. The District Court dismissed Curry's malicious prosecution claims against Yachera, Wal-Mart, John Does, and Fitcher with prejudice because Curry could not prove a favorable termination of the criminal proceedings against him. In such circumstances, the statute of limitations begins to accrue when the termination of criminal proceedings becomes favorable; that is, when "the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." Heck, 512 U.S. at 489. Dismissal of these claims with prejudice, therefore, was in error. See Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999) ("Disposition of the case on Heck grounds . . . warrants only dismissal without prejudice."); White v. Gittens, 121 F.3d 803, 807 (1st Cir. 1997); Fottler v. United States, 73 F.3d 1064, 1065 (10th Cir. 1996) ("When a § 1983 claim is dismissed under Heck, the dismissal should be without prejudice."); Perez v. Sifel, 57 F.3d 503, 505 (7th Cir. 1995) ("[B]ecause appellant could renew these claims [barred by Heck] if he ever succeeds in overturning his conviction, dismissal without prejudice is appropriate."); Trimble v. City of Santa Rosa, 49 F.3d 583, 585 (9th Cir. 1995); Schafer v. Moore, 46 F.3d 43, 45 (8th Cir. 1995) ("Although we affirm the district court's order, we modify the order of dismissal to be without prejudice so that Schafer can refile his complaint should he succeed in challenging the legality of his continued confinement through appropriate state or federal remedies.").

Accordingly, we will modify the order of dismissal regarding Curry's malicious prosecution claims against Yachera, Wal-Mart, John Does, and Fitcher to reflect that these claims are dismissed without prejudice.

V.

We next consider whether the District Court erred in dismissing Curry's malicious prosecution claim against McClure. McClure's charges related to involvement in a larger theft ring, while Yachera's charges appear to relate to the specific theft at the Wal-Mart. App. 30-31. Heck does not apply to the claims against McClure because the nolo contendere plea only related to Yachera's charges, not McClure's.

10

To prove a Fourth Amendment malicious prosecution claim, a plaintiff must show: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007).[13] The District Court dismissed the malicious prosecution claim against McClure because Curry could not meet the fifth element. We agree with that ruling.

Curry was already incarcerated on Yachera's charges when McClure brought his charges against Curry.[14] When McClure's charges were dropped, Curry was still in jail. As a result, McClure never deprived Curry of his liberty "as a consequence of" the charges McClure brought against Curry. Curry's liberty had already been deprived. See United States v. Johnson, 703 F.3d 464, 470 (8th Cir. 2013) ("Johnson is already incarcerated. His liberty is already deprived . . . . No new deprivation of liberty can be visited upon him . . . ." (citation omitted)); Gallo v. City of Phila., 161 F.3d 217, 222 (3d Cir. 1998) ("[A] plaintiff asserting a malicious prosecution claim must show some deprivation of liberty consistent with the concept of seizure." (quotation marks omitted)); Gravely v. Madden, 142 F.3d 345, 348 (6th Cir. 1998) ("The Fourth Amendment is not triggered anew [when a person] has already been 'seized' . . . ."); United States v. Sutton, 607 F.2d 220, 222 (8th Cir. 1979) ("[A]ppellant was

---

[13] The deprivation of liberty element of a malicious prosecution claim is required when raising a claim under the Fourth Amendment, as appears to be the case with Curry's complaint. Johnson, 477 F.3d at 82 n.8; App. 33.

[14] Curry argues that the District Court went beyond the allegations of the complaint when it found that McClure did not seize Curry because he was already incarcerated. But the complaint clearly indicates that Curry was already incarcerated when McClure charged him. App. 30. This argument, therefore, is meritless.

already confined; he had been legally deprived of his liberty and was in the custody of the State of Missouri. Therefore, no interruption of his 'liberty' occurred."); Turner v. Schultz, 130 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (noting the lack of any support for the proposition "that an already lawfully incarcerated prisoner is seized for Fourth Amendment purposes when he is charged with an additional crime.").[15]

McClure simply never deprived Curry of his liberty as a consequence of his (McClure's) charges. Therefore, the District Court properly dismissed the Fourth Amendment malicious prosecution claim against McClure.

## VI.

For the foregoing reasons, we will affirm the District Court's order of dismissal in all respects except that we will modify the order regarding Curry's malicious prosecution claims against Yachera, Wal-Mart, John Does, and Fitcher to reflect that these claims are dismissed without prejudice.

---

[15] Our holding does not necessarily mean that a plaintiff can never suffer a "deprivation of liberty consistent with the concept of a seizure" when already incarcerated. See Johnson, 477 F.3d at 82. Curry has not alleged any facts that he was seized by McClure. We leave open the possibility that a set of facts could exist where an already imprisoned plaintiff can demonstrate a seizure sufficient for a malicious prosecution claim. See Gallo, 161 F.3d at 222 (holding that a plaintiff was seized for purposes of a Fourth Amendment malicious prosecution claim because he had to post a $10,000 bond, attend all court hearings, was required to contact Pretrial Services on a weekly basis, and was prohibited from travelling outside the states of New Jersey and Pennsylvania).